# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BLUEFIELD DIVISION

| | | |
|---|---|---|
| **KENNETH A. WHITE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 1:13-8738** |
| | ) | |
| **ALLIANCE ONE RECEIVABLE,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are the following Motions: (1) Defendant Wells Fargo's Motion to Dismiss (Document No. 6.), filed on April 25, 2013; (2) Defendant Lorain National Bank's Motion to Dismiss for Lack of Personal Jurisdiction (Document No. 18.), filed on April 30, 2013; (3) Defendant Bank of America's Motion to Dismiss (Document No. 23.), filed on April 30, 2013; (4) Defendant DFS Services's Motion to Dismiss (Document No. 26.), filed on April 30, 2013; (5) Defendant Huntington National Bank's Motion to Dismiss (Document No. 28.), filed on April 30, 2013; (6) Defendant East Ohio Gas Company D/B/A Dominion East Ohio's Motion to Dismiss (Document No. 57.), filed on June 18, 2013; (7) Plaintiff's "Motion to Strike Defendant Wells Fargo Bank N.A. D/B/A Wells Fargo Home Mortgage, Inc. Memorandum in Support of Motion to Dismiss" (Document No. 60.), filed on June 18, 2013; (8) Plaintiff's "Motion to Supplement U.S.C. Rule 15 and to Dismiss Defendant's Motion Stating 'For Lack of Subject Matter and Personal Jurisdiction'" (Document No. 90.), filed on October 3, 2013, and (9) Plaintiff's Motion for Voluntary Dismissal (Document No. 97.), filed on October 22, 2013.

## PROCEDURAL AND FACTUAL HISTORY

On March 26, 2013, Plaintiff, proceeding *pro se* and in confinement at FCI McDowell, filed his Complaint in the Circuit Court of McDowell County, West Virginia.[1] (Document No. 1, pp. 9 - 14.) Plaintiff names the following as Defendants: (1) Alliance One Receivable; (2) Bank of America; (3) Chase/Bank One Card Service; (4) Dominion East; (5) Huntington National Bank Lease ["HNB"]; (6) Kent Credit Union; (7) Lorain National Bank ["LNB"]; (8) Wells Fargo Bank; (9) Wells Fargo Home Mortgage; and (10) Discover Financial SVC, LCC. (Id.) Plaintiff complains that Defendants have created "fraudulent accounts" and engaged in "identity theft." (Id.) Plaintiff contends that Defendants provided inaccurate information to credit agencies in violation of the Federal Debt Collection Practices Act. (Id.) Plaintiff further claims that Defendants placed "suspensions and citations" on his credit report. (Id.) Plaintiff requests monetary relief and that Defendants provide "release forms . . . stating that these matters have been resolved and Plaintiff's credit has been cleared from all of these 'fraudulent' accounts." (Id.)

On April 23, 2013, Bank of America filed its Notice of Removal with this Court. (Document No. 1.) Subsequently, Wells Fargo Bank, Kent Credit Union, and Dominion East filed their Consents to Removal. (Document Nos. 3, 4, 9.) On April 25, 2013, Kent Credit Union and Wells Fargo filed their Motions to Dismiss. (Document Nos. 5 and 6.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on April 26, 2013, advising him of the right to file a response to the Defendants' Motion for Judgment on the Pleadings. (Document No. 12.) On April 26, 2013, Alliance One Receivable filed its Motion to Dismiss and Memorandum in Support.

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

(Document Nos. 14 and 15.) Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on April 29, 2013, advising him of the right to file a response to the Defendants' Motion for Judgment on the Pleadings. (Document No. 16.) On April, 29, 2013, Bank of America filed its Amended Notice of Removal. (Document No. 17.) On April 30, 2013, LNB, Chase Bank, Bank of America, Discover Financial, and HNB filed their Motions to Dismiss and Memorandum in Support. (Document Nos. 18, 19, 21 - 24, 26 - 29.) Notice pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on May 2, 2013, advising him of the right to file a response to the Defendants' Motion for Judgment on the Pleadings. (Document No. 31.)

On May 14, 2013, Plaintiff filed his Response in Opposition to Defendants' Motion to Dismiss and Motion for Leave to Amend Complaint. (Document Nos. 35 and 36.) On May 21, 2013, Alliance One and Plaintiff filed a Proposed Agreed Order of Dismissal with Prejudice. (Document No. 37.) On May 21, 2013, Chase Bank filed its "Combined Reply in Support of Defendant Chase Bank USA, N.A.'s Motion to Dismiss and Response in Opposition to Plaintiff's Motion Requesting Leave to Amend." (Document No. 36.) On May 29, 2013, LNB, Wells Fargo and Kent Credit Union filed their Responses in Opposition to Plaintiff's Motion for Leave to Amend. (Document No. 38, 39, and 41.) Also on May 29, 2013, Plaintiff filed his Reply to Chase Bank's Response. (Document No. 42.) On May 30, 2013, Plaintiff filed a Motion Requesting Leave to Amend Complaint. (Document No. 43.) On May 31, 2013, United States District Judge Irene C. Berger entered the "Agreed Proposed Order of Dismissal" dismissing Alliance One. (Document No. 44.) Also on May 31, 2013, Bank of America filed its Response in Opposition to Plaintiff's Motion to Amend. (Document No. 45.) On June 4, 2013, Plaintiff filed his Response to LNB's Motion to Dismiss.

3

(Document No. 46.) By Proposed Agreed Dismissal Order entered on June 7, 2013, the District Court dismissed Chase Bank. (Document No. 49.) On June 13, 2013, Plaintiff filed his Response in Opposition to Dominion East's Motion to Dismiss. (Document No. 52.)

On June 18, 2013, HNB, Discover Financial, and Dominion East filed their Memorandums in Opposition to Plaintiff's Motion to Amend. (Document Nos. 53 and 54.) Dominion East filed its Motion to Dismiss on June 18, 2013. (Document No. 57.) Also on June 18, 2013, Plaintiff filed a Motion to Strike Wells Fargo's Motion to Dismiss. (Document No. 60.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on June 19, 2013, advising him of the right to file a response to the Defendants' Motions to Dismiss. (Document No. 63.) On June 26, 2013, Plaintiff filed Affidavits in Response to the Motions to Dismiss filed by Discover Financial and Dominion East. (Document Nos. 66 and 67.) On July 1, 2013, Plaintiff filed Affidavits in Response to the Motions to Dismiss filed by Bank of America and LNB. (Document Nos. 70 and 71.) On July 9, 2013, Plaintiff filed Affidavits in Response to the Motions to Dismiss filed by Kent Credit Union and HNB. (Document Nos. 72 and 73.) On July 10, 2013, Plaintiff filed an Affidavit in Response to the Motion to Dismiss filed by Wells Fargo. (Document No. 75.) By Dismissal Order entered on August 26, 2013, the District Court dismissed Kent Credit Union. (Document No. 78.)

On August 28, 2013, Plaintiff filed a Motion Requesting Permission to Proceed with Discovery. (Document No. 79.) On September 11, 2013, Bank of American and Wells Fargo filed Responses in Opposition to Plaintiff's Motion for Discovery. (Document Nos. 80 and 81.) On September 17, 2013, Plaintiff filed an Amended Motion Requesting Permission to Proceed with Discovery. (Document No. 82.) On September 24, 2013, Bank of American and Wells Fargo filed Responses in Opposition to Plaintiff's Amended Motion for Discovery. (Document Nos. 83.)

4

Plaintiff filed his Reply on October 1, 2013. (Document No. 87.) On October 4, 2013, Bank of America filed its "Motion for Relief from Plaintiff's Vexatious Conduct." (Document No. 92.) On October 10, 2013, Wells Fargo filed a Motion to Quash Subpoena. (Document No. 93.)

By Memorandum Opinion and Order entered on October 16, 2013, the undersigned denied Plaintiff's Motion Requesting Permission to Proceed with Discovery" (Document No. 79.), denied Plaintiff's Amended Motion Requesting Permission to Proceed with Discovery (Document No. 82.); granted "Wells Fargo Bank, N.A. D/B/A Wells Fargo Home Mortgage's Motion to Quash Subpoena" (Document No. 93.);and granted in part and denied in part "Defendant Bank of America, N.A.'s, Motion for Relief from Plaintiff's Vexatious Conduct" (Document No. 92.). (Document No. 95.) Specifically, the undersigned granted "Defendant Bank of America, N.A.'s, Motion for Relief from Plaintiff's Vexatious Conduct" to the extent it requested that the Court "deny Plaintiff's Motion and Amended Motion seeking this Court's permission to begin discovery in this matter, including Plaintiff's attempt to proceed with a subpoena duces tecum," and denied it to the extent it requests the "Court grant BANA's Motion to Dismiss." (Id.) Plaintiff filed his Objections on October 22, 2013. (Document No. 96.)

On October 22, 2013, Plaintiff filed his "Motion to Dismiss Defendants: Dominion East, Huntington National Bank Lease, LNB, and Discover Financial Service, LLC." (Document No. 97.) Specifically, Plaintiff requests that Defendants be dismissed "at this time in order to file at a later time of convenience." (Id.) On November 5, 2013, Dominion East filed its Response in Opposition. (Document No. 99.) On November 18, 2013, LNB filed its Response in Opposition. (Document No. 100.)

## THE STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

## ANALYSIS

**1.      Motion for Voluntary Dismissal:**

In his Motion, Plaintiff requests that Dominion East, HNB, LNB, and DFS be dismissed "in order to file at a later time of convenience." (Document No. 97.)

Dominion East filed its Response in Opposition arguing as follows: (1) "Dismissal without prejudice is improper given this Defendant's pending motion to dismiss for lack of subject matter jurisdiction" (Document No. 99, pp. 3 - 4.); and (2) "Dismissal without prejudice is improper given Plaintiff's history of harassment" (Id., pp. 4 - 5.). As Exhibits, Dominion East attaches copies of

letters written by Plaintiff to Dominion East. (Document Nos. 99-1, 99-2, 99-3.)

LNB filed its Response requesting that Plaintiff's claims be dismissed with prejudice or that the Court grant LNB's Motion to Dismiss for Lack of Personal Jurisdiction. (Document No. 100.) LNB states that Plaintiff has sought to "extort settlements from defendants by threatening to file bogus UCC forms." (Id., pp. 1 - 2.) LNB argues that "[a]llowing Plaintiff to voluntarily dismiss his claims without prejudice would merely give him leave to file the same lawsuit in the same West Virginia state court with no consequences for wasting this Court's or the parties' time and resources." (Id., p. 3.) As Exhibits, LNB attaches the following: (1) Copies of letters written by Plaintiff to LNB (Document Nos. 100-1, 100-2.); (2) A copy of the Memorandum of Opinion and Order as filed in White v. Lorain National Bank, Case No. 1:11-cv-284 (N.D.Ohio April 8, 2011) (Document No. 100-3.); (3) A copy of the Memorandum of Opinion and Order as filed in White v. Sky Bank/Huntington National Bank, et al., Case No. 4:11-cv-259 (N.D.Ohio April 12, 2011) (Document No. 100-4.); (4) A copy of the Memorandum of Opinion and Order as filed in White v. Huntington National Bank, et al., Case No. 1:11-cv-264 (N.D.Ohio May 11, 2011) (Document No. 100-5.); (5) A copy of the Memorandum of Opinion and Order as filed in White v. Huntington National Bank, et al., Case No. 1:11-cv-265 (N.D.Ohio May 11, 2011) (Document No. 100-6.); and (6) A copy of the Memorandum of Opinion and Order as filed in White v. Bank of New York, et al., Case No. 4:11-cv-333 (N.D.Ohio May 11, 2011) (Document No. 100-7.)

Federal Rule of Civil Procedure 41(a)(1)(A)(i) provides that a plaintiff may voluntarily dismiss an action without a Court Order by filing "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment[.]" Rule 41(a)(1)(B) states in pertinent part, as follows:

> Unless the notice of dismissal or stipulation states otherwise, the dismissal is without prejudice. But if the plaintiff previously dismissed any federal – or state – court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.

Rule 41(a)(2) of the Federal Rules of Civil Procedure provides that "[e]xcept as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." The purpose of the Rule respecting voluntary dismissal "is freely to allow voluntary dismissals unless the parties will be unfairly prejudiced." Davis v. USX Corp., 819 F.2d 1270, 1273 (4th Cir. 1987). "A plaintiff's motion under Rule 41(a)(2) should not be denied absent substantial prejudice to the defendant." Andes v. Versant Corp., 788 F.2d 1033, 1036 (4th Cir. 1986). It is well established that prejudice to the defendant does not result from the prospect of a second lawsuit. See Vosburgh v. Indemnity Ins. Co. of North America, 217 F.R.D. 384, 386 (S.D. W.Va. Sep. 12, 2003). In considering a Motion under Rule 41(a)(2), the District Court should consider the following relevant, but non-dispositive, factors: "(1) the opposing party's effort and expense in preparing for trial; (2) excessive delay or lack of diligence on the part of the movant; (3) insufficient explanation of the need for a dismissal; and (4) the present stage of the litigation, i.e., whether a motion for summary judgment is pending." Id.

In consideration of the above factors, the undersigned finds that Plaintiff's Motion for Voluntary Dismissal should be denied. In the instant case, all remaining Defendants have filed dispositive motions seeking the dismissal of Plaintiff's Complaint. Plaintiff has responded to Defendants' dispositive motions and the motions are currently pending before the Court. Defendants have been subjected to the expense of preparing their dispositive motions and filing Replies to Plaintiff's Responses. At the present stage of the litigation, the undersigned finds that Defendants would be unfairly prejudiced by the voluntary dismissal of Plaintiff's Complaint. Additionally,

Plaintiff offers an insufficient explanation of the need for a dismissal. Plaintiff merely states that he wishes to dismiss Defendants so that he may re-file "at a later time of convenience." Plaintiff fails to explain why the present time is inconvenient. Based upon the foregoing, the undersigned recommends that Plaintiff's Motion for Voluntary Dismissal (Document No. 97.) be denied.[2]

**2.     Failure to State a Claim:**

Wells Fargo's Motion to Dismiss:

In its Motion to Dismiss, Wells Fargo first argues that Plaintiff's Complaint should be dismissed "because it does not meet the pleading requirements of Fed. R. Civ. P. 8(a)(2)." (Document No. 7, pp. 3 - 4.) Wells Fargo asserts that Plaintiff's Complaint is "written without regard to particularity  and lacks allegations establishing that Plaintiff has a 'plausible entitlement to relief' against Wells Fargo and because it uses an impermissible group pleading approach." (Id.) Wells Fargo states that "Plaintiff makes general claims and seeks damages against Defendants' without explaining how or why Wells Fargo could be liable." (Id., p. 4.) Wells Fargo explains that "Plaintiff's entire Complaint is vague, nonspecific, and lacks the level of specificity that would allow any reasonable party in this case to be on notice of what Plaintiff is actually claiming that Wells Fargo has done wrong." (Id.) Wells Fargo notes that although Plaintiff "appears to allege non-compliance with the Fair Debt Collection Practice Act ("FDCPA"), [he] fails to allege specifically how Wells Fargo violated the FDCPA." (Id.) Second, Wells Fargo argues that Plaintiff's Complaint

---

[2]  The undersigned notes that Plaintiff is a frequent filer. Specifically, Plaintiff has initiated seven other civil actions in this Court: (1) *White v. Equifax Credit Information Services, et al.*, Civil Action No. 1:12-06374; (2) *White v. Huntington Nation Bank*, Civil Action No. 1:12-07503; (3) *White v. Old Republic National Title Insurance, et al.*, Civil Action 1:12-07965; (4) *White v. Sky Bank, et al.*, Civil Action 1:13-18342; (5) *White v. Sovereign Bank, et al.*, 1:13-24248; (6) *White v. Farmer Financial Services*, Civil Action No. 1:13-24933; and (7) *White v. Fannie Mae, et al.*, Civil Action No. 1:13-29923.

"should be dismissed because Plaintiff fails to pled fraud with particularity pursuant to W. Va. R. Civ. P. 9(b)." (Id., pp. 5 - 6.)  Wells Fargo explains that "Plaintiff fails to allege any element of a fraud cause of action, rather he proffers general allegations that Wells Fargo possesses a fraudulent account or engaged in fraudulent conduct." (Id.) Finally, Wells Fargo asserts that "Plaintiff fails to offer any basis of how Wells Fargo harmed him or the basis for the relief his seeks." (Id., p. 6.)

In Response, Plaintiff filed his "Motion to Strike Defendant Wells Fargo Bank N.A. D/B/A Wells Fargo Home Mortgage, Inc. Memorandum in Support of Motion to Dismiss." (Document No. 60.) Plaintiff argues that he has never had an account with Wells Fargo, but an "up-to-date credit report shows [he] has two accounts with Wells Fargo." (Id., p. 2.) Plaintiff states that the first account was opened on October 12, 2007, and the second account was opened on December 24, 2007. (Id.) Plaintiff claims that he is the "victim of identity theft and had several accounts opened without his knowledge." (Id.) Plaintiff argues that he contacted Wells Fargo "asking to resolve this situation of fraudulent accounts on his credit report and they refused to give any information to Plaintiff." (Id.) Plaintiff, therefore, requests "to remove the two fraudulent accounts from his credit report and to be sent a release." (Id.)

On July 10, 2013, Plaintiff filed his Affidavit stating that he never had an account Wells Fargo with either account numbers 6506507349385**** or 708008091****." As an Exhibit, Plaintiff attaches a copy of his Consumer Credit Report. (Id., p. 2.)

Bank of America's Motion to Dismiss:

In its Motion to Dismiss, Bank of America first argues that "Plaintiff's Complaint should be dismissed because his conclusory allegations fail to comply with Rule 8(a) and (9)(b) of the Federal Rules of Civil Procedure, and he fails to state a claim." (Document No. 24, pp. 3 - 4.) Bank of

America explains that "Plaintiff has not pled the material elements to sustain recovery under any viable legal theory." (Id., p. 4.) Bank of America asserts that Plaintiff's mere allegation "that a defendant committed wrongdoing, or even articulating a legal theory, without more, does not satisfy the pleading requirements under Rule 8." (Id.) Bank of America argues that Plaintiff's allegations "fall far short of the particularity standard required by Rule 9(b), notwithstanding the fact that essentially all of Plaintiff's claims against Bank of America sound in fraud." (Id.) Bank of America explains that "Plaintiff omits any allegation that would even arguably address a single element of fraud under West Virginia law." (Id.)

Second, Bank of America argues that "Plaintiff's claim for violation of the Fair Debt Collection Practices Act fails because Bank of America is not a debt collector." (Id., pp. 4 - 5.) Bank of America states that "Plaintiff evidently asserts that the FDCPA violation is related to Bank of America account no. 426429999876****, and it stands to reason that Plaintiff is referencing a credit card account." (Id., p. 5.) Bank of America explains that "to the extent such an account even exists, Bank of America would be the creditor of the account in question – not a 'debt collector' – and it therefore would not be subject to the FDCPA." (Id.)

Third, Bank of America "fails to state a claim under the Fair Credit Reporting Act." (Id., pp. 5 - 6.) Bank of America contends that "[l]ike his other claims, these must fail because Plaintiff has failed to supply any supporting factual allegations." (Id., p. 5.) Bank of America asserts that "FCRA simply does not apply to any conduct potentially alleged against [it], and Plaintiff's FCRA claims must be dismissed for this independent reason." (Id.) Bank of America explains "identity theft claims brought under the FCRA do not apply to defendants like Bank of America" because "identity theft claims apply only to 'consumer reporting agenc[ies],' which does not include Bank of America,

the alleged issuer of the credit." (Id., p. 6.) Bank of America contends that "Plaintiff's complaint is devoid of any allegations that Bank of America is in the business of assembling or providing consumer credit information to third parties for a fee." (Id.) Finally, Bank of America argues that "Plaintiff cannot bring a private right of action against Bank of America to redress inaccurate information furnished to consumer reporting agencies regarding his debt" because "[s]uch claims may only be enforced by certain Federal and State authorities." (Id.)

As Exhibits, Bank of America attaches the following: (1) A copy of Plaintiff's Complaint as filed in the Circuit Court of McDowell County (Document No. 23-1.); and (2) A copy of a "Memorandum Opinion and Order" as entered in the Northern District of Ohio in White v. Bank of America, Case No. 1:11-cv-2117 (N.D.Ohio Jan. 6, 2012) (Document No. 23-2.).

On July 1, 2013, Plaintiff filed his Affidavit stating that he does "not owe balance of account # 426429999876**** of Bank of America." (Document No. 70.)

DFS Services' Motion to Dismiss:

In its Motion to Dismiss, DFS first argues that Plaintiff's "Complaint fails to state a claim upon which relief can be granted." (Document No. 27, p. 4.) DFS explains that the "only substantive allegations in Plaintiff's Complaint are that he has 'tried to get these reports of creditors off of his inquiry, but has been unsuccessful,' and that 'these companies failed to produce any copies of these 'fraudulent transcripts' or 'transactions.''" (Id.) DFS argues that "[t]hose statements fail to identify any actionable conduct by DFS . . . let alone explain how DFS purportedly violated FDCPA." (Id.) DFS contends that "[t]hey are simply 'sentence fragments' that do not set forth 'full-blown claims.'" (Id.) DFS requests that "this Court dismiss the claims against it with prejudice," because "Plaintiff previously filed a nearly identical claim in the Court of Common Pleas of Cuyahoga County, Ohio,

which that court also dismissed." (Id.)

Second, DFS argues that Plaintiff did not properly serve the Summons and Complaint on DFS. (Id., pp. 4 - 5.) DFS explains that "[o]n or about March 26, 2013, the Clerk of the Circuit Court of McDowell County issued a Summons and Complaint to 'Discover Fincl SVC LLC, P.O. Box 15316, Wilmington, DE 19850-5316,' via regular mail." (Id., p. 4.) DFS asserts that "[s]ervice of process on an entity such as DFS via regular mail is not effective under West Virginia law . . . unless (a) directed to an officer, director, trustee, agent, or agent or attorney in fact authorized to receive or accept service, and (b) waiver form is included." (Id., pp. 4 - 5.) DFS contends that "Plaintiff's attempted service on DFS satisfied neither of those requirements, and accordingly was insufficient." (Id., p. 5.)

As Exhibits, DFS attaches the following: (1) A copy of Plaintiff's Complaint as filed in the Court of Common Pleas in Cuyahoga County, Ohio (Document No. 26-1, pp. 1 - 3.); (2) A copy of the "Journal Entry" noting that DFS's Motion to Dismiss was granted in the Court of Common Pleas in Cuyahoga County, Ohio (Id., p. 4.); (3) A copy of the Summons as issued by the Circuit Court of McDowell County (Id., p. 5.).

In Response, Plaintiff filed his Affidavit stating that he paid off his account with DFS on July 29, 2008. (Document No. 66.) Plaintiff states that "any transaction from account above was made while I was incarcerated in Youngstown, Ohio CCA prison." (Id.) As an Exhibit, Plaintiff attaches a copy of his credit report dated November 28, 2012. (Id., p. 2.)

Huntington National Bank's Motion to Dismiss:

In its Motion to Dismiss, HNB first argues that Plaintiff's "Complaint fails to state a claim upon which relief can be granted." (Document No. 29, p. 3.) HNB explains that the "only

13

substantive allegations in Plaintiff's Complaint are that he has 'tried to get these reports of creditors off of his inquiry, but has been unsuccessful,' and that 'these companies failed to produce any copies of these 'fraudulent transcripts' or 'transactions.'" (<u>Id.</u>) HNB argues that "[t]hose statements fail to identify any actionable conduct by [HNB] . . . let alone explain how [HNB] purportedly violated FDCPA." (<u>Id.</u>) HNB contends that "[t]hey are simply 'sentence fragments' that do not set forth 'full-blown claims.'" (<u>Id.</u>)

Second, HNB argues that Plaintiff "did not serve the Summons and Complaint on the Bank." (<u>Id.</u>, p. 4.) HNB explains that "on or about March 26, 2013, the Clerk of the Circuit Court of McDowell County issued a Summons and Complaint to "Huntington National Bank Lease," via regular mail." (<u>Id.</u>) HNB states that the state court docket sheet reveals that "on April 1, 2013, those documents were 'Returned to Sender, Not Deliverable as Addressed.'" (<u>Id.</u>)

In Response, Plaintiff filed his Affidavit stating that he has never had an account with HNB regarding an "automobile lease Account # 000044****." (Document No. 73.)

<u>Analysis</u>:

Although pleadings filed by a *pro se* plaintiff are entitled to liberal construction, this "does not mean that the Court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court." <u>Drummond v. South Carolina Department of Corrections</u>, 2012 WL 5077575, * 3 (D.S.C. Oct. 1, 2012)(citing <u>Weller v. Department of Social Services</u>, 901 F.2d 387, 390-91 (4th Cir. 1990)). Federal Rule of Civil Procedure 8(a)(2) provides that "[a] pleading that states a claim for relief must contain * * * (2) a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Rule 8(d)(1) provides that the allegations contained in the pleading "must be simple, concise and direct." "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Iqbal</u>, 556 U.S. at 678, 129 S. Ct. at 1949(quoting <u>Twombly</u>, 550 U.S. at 570, 127 S.Ct. at 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. <u>Id.</u> "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." <u>Twombly</u>, 550 U.S. at 555, 127 S.Ct. at 1959. Thus, when a defendant challenges the sufficiency of a complaint under Rule 8(a)(2), the Court examines the factual allegations contained therein to determined if they reasonably indicate that discovery will yield evidence of all of the elements of the plaintiff's claim. If, viewing the factual allegations as true, the Court cannot conclude that discovery will yield evidence of all of the elements of the plaintiff's claim, the Court must dismiss the claim.

"To state a claim under the [Fair Debt Collection Practices Act] FDCPA, a plaintiff must show: '(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA,[3] and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.'" <u>Patrick v. Teays Valley Trustees, LLC</u>, 2012 WL 5993163 (N.D.W.Va. Nov. 30, 2012.) Congress enacted the FDCPA to "eliminate abuse debt collection

---

[3] "Debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debt owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

practices by debt collectors." 15 U.S.C. § 1692(e). Under Section 1692g of the FDCPA, debt collectors must inform consumers of (1) the amount of the debt; (2) the name of the creditor; (3) a statement that unless the consumer, within thirty days of receipt of the notice, disputes the validity of the debt, the debt will be assumed to be valid; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt is disputed, the debt collector will obtain verification of the debt or a copy of the judgment against the consumer and a copy of either document will be mailed to the consumer; and (5) a statement that, if the consumer requests in writing within the thirty-day period, the debt collector will provide the name and address of the original creditor, if different from the current creditor.  See 15 U.S.C. § 1692g(a)(1)-(5).

Rule 9 imposes a heightened pleading standard concerning claims of fraud. Specifically, Rule 9 requires a plaintiff to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The "circumstances" required to be pled with particularity are the "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999). To state a claim for fraud under West Virginia law, a plaintiff must establish that: "(1) the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied on it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied on it." See Coffman v. Bank of America, N.A., 2010 WL 3069905 (S.D.W.Va. Aug. 4, 2010)(citing Folio v. City of Clarksburg, 221 W. Va. 397, 655 S.E.2d 143 (2007)).

Construing Plaintiff's complaint liberally, his allegations do not state the essential elements of a FDCPA or fraud claim. Specifically, Plaintiff fails to allege any facts explaining how any of the

Defendants violated the FDCPA or committed fraud. Plaintiff merely states that he is filing his Complaint "based on 'Fraudulent Accounts' and 'Identity Theft' and 'Inaccurate Info' to credit agencies, not complying with the FDCPA (Federal Debt Collection Practices Act)." Plaintiff then lists partial account numbers regarding each Defendant. Plaintiff, however, fails to provide sufficient factual detail to plausibly demonstrate a claim for relief. Plaintiff's conclusory claim that Defendants violated the FDCPA is insufficient. Plaintiff further fails to allege that each Defendant is a debt collector under the FDCPA. To the extent Plaintiff is attempting to state a fraud claim, Plaintiff does not allege "the time, place, or contents of the false representations" or "the identity of the person making the misrepresentation and what he obtained thereby." Accordingly, the undersigned recommends that Defendants Wells Fargo, Bank of America, DFS, and HNB's Motions to Dismiss (Document Nos. 6, 23, 26, and 28.) be granted to the extent they seek dismissal of the action for failure to state a claim. The undersigned finds it unnecessary to consider the other reasons which the Defendants have submitted for dismissal. The undersigned further recommends that Plaintiff's "Motion to Strike Defendant Wells Fargo Bank N.A. D/B/A Wells Fargo Home Mortgage, Inc. Memorandum in Support of Motion to Dismiss" (Document No. 60.) and Plaintiff's "Motion to Supplement U.S.C. Rule 15 and to Dismiss Defendant's Motion Stating "For Lack of Subject Matter and Personal Jurisdiction" (Document No. 90.) be denied.

**3.      Personal Jurisdiction:**

When a federal court's personal jurisdiction is challenged under Federal Rule of Civil Procedure 12(b)(2), it is ultimately the plaintiff's burden to prove that jurisdiction exists by a preponderance of the evidence. Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 396 (4th Cir. 2003)(citing Mylan Labs, Inc. v. Akzo, N.V., 2 F.3d 56 (4th Cir. 1993)). When

the court addresses the jurisdictional question "on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." New Wellington Financial Corp. v. Flagship Resort Development Corp., 416 F.3d 290, 294 (4th Cir. 2005). "In determining whether the plaintiff has made the requisite showing, the court must construe all relevant allegations of the pleadings and draw all reasonable inference in favor of the existence of jurisdiction. Carefirst, 334 F.3d at 396. Two conditions must be satisfied for a district court to assert personal jurisdiction over a non-resident defendant: (1) A state long-arm jurisdiction statute must authorize jurisdiction over the non-resident defendant; or (2) The court's exercise of personal jurisdiction over the non-resident defendant must "comport with the Due Process Clause." Mylan Lab, Inc. v. Akzo, N.V., 2 F.3d 56, 59-60 (4th Cir. 1993); In re Celotex Corp., 124 F.3d 619, 627 (4th Cir. 1997). Since "the West Virginia long-arm statute is coextensive with the full reach of due process, it is unnecessary in this case to go through the normal two-step formula for determining the existence of personal jurisdiction." In re Celotex Corp., 124 F.3d at 627-28(citation omitted); also see York v. Property and Casualty Ins. Co. of Hartford, 2013 WL 5504435 (S.D.W.Va. Oct. 3, 2013)("the statutory inquiry mergers with the constitutional inquiry, and the two inquires essentially become one.) Therefore, the court's inquiry centers on whether the exercise of personal jurisdiction over the non-resident defendant is consistent with the Due Process Clause.

It is well established that the exercise of personal jurisdiction over the non-resident defendant is consistent with the Due Process Clause "if the defendant has sufficient 'minimum contacts' with the forum such that requiring the defendant to defend its interests in the forum does not 'offend traditional notions of fair play and substantial justice.'" In re Celotex Corp., 124 F.3d

at 628(quoting International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95

(1945). When assessing the "minimum contacts," courts should consider whether the defendant's

contacts with the forum also provides the basis for the suit. Carefirst, 334 F.3d at 397. If the

defendant's contact with the forum state provides the basis for the suit, courts may exercise what

is known as "specific jurisdiction." Id. To determine whether specific jurisdiction exists, the Court

should consider the following: "(1) the extent to which the defendant has purposefully availed itself

of the privilege of conducting activities in the state; (2) whether the plaintiff's claims arise out of

those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be

constitutionally 'reasonable.'" Id. If the defendant's contact with the forum state does not provide

the basis for the suit, a court may only exercise "general jurisdiction." Id. General jurisdiction is

appropriate only where the defendant's contacts with the forum are "continuous and systematic."

Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415, 104 S.Ct. 1868, 80 L.Ed.2d

404 (1984).

     A.     LNB:

In its Motion to Dismiss, LNB first argues that it "does not maintain systematic or

continuous contacts with West Virginia." (Document No. 19, p. 3." LNB explains that its "is a

national bank with its principal place of business in Ohio." (Id.) LNB argues that "in order for this

Court to maintain jurisdiction over LNB, LNB must have had 'sufficient minimum contacts' with

West Virginia such that exercising jurisdiction would not offend the Due Process Clause." (Id.) LNB

contends that Plaintiff's Complaint "fails to sufficiently allege any such minimum contacts and

because such contacts do not, in fact, exist." (Id.) Next, LNB argues that it "is not subject to general

jurisdiction because it lacks continuous and systematic contacts with West Virginia." (Id.) LNB

asserts that it does not have "continuous and systematic contacts" with West Virginia because (1) "LNB does not have any branches, offices, or other operations in West Virginia;" (2) "LNB does not own any real property in West Virginia;" and (3) "LNB does not conduct or transact business in West Virginia." (Id.) Third, LNB contends that "[s]pecific jurisdiction is lacking because LNB did not purposefully avail itself of the privilege of conducting business in West Virginia and Plaintiff is not a West Virginia resident." (Id., p. 4.) LNB states that Plaintiff "does not allege that LNB physically conducted any activities in West Virginia." (Id.) LNB explains that the "only 'activity' seemingly alleged in the Complaint is that LNB, without Plaintiff's permission, allegedly allowed someone to open a 'Fraudulent Account' in Plaintiff's name on November 17, 2008." (Id.) LNB further contends that "Plaintiff was an Ohio resident at all times relevant to his Complaint and remains an Ohio resident today." (Id.) LNB explains that in a prior litigation filed in the Northern District of Ohio, Plaintiff admitted that "he was an Ohio resident in 2008, the relevant period for the current lawsuit." (Id., pp. 4 - 5.) LNB argues that "Plaintiff's current temporary and involuntary presence in West Virginia does not establish residency in this state." (Id., p. 5.)

As Exhibits, LNB attaches the following: (1) The Declaration of Kelly Dunfee, Vice President of LNB (Document No. 18-1.); (2) A copy of Plaintiff's Complaint as filed in White v. Lorain National Bank, No. 1:11-cv-284 (N.D. Ohio Feb. 9, 2011) (Document No. 18-2.); and (3) A copy of Plaintiff's Official Driving Records, Ohio Bureau of Motor Vehicles (Document No. 18-3.).

In Response, Plaintiff argues that he "alleges specific jurisdiction as only the defendant LNB debt and collection violations are in question." (Document No. 46, p. 2.) Plaintiff claims that "LBN without indisputableness has placed fraudulent charges onto his credit report and attempted to collect such debts with the knowing and intentional knowledge." (Id.) Plaintiff asserts that "[t]hese

20

fraudulent reports and debt collection practices imposed onto his credit report have resulted in significant accumulated losses due to an inability to refinance." (Id.) Plaintiff contends that "LNB has attempted to collect debts and has continued to conduct fraudulent debt practices while Plaintiff was in West Virginia, and is therefore, responsible for its actions in the State of West Virginia." (Id.) Plaintiff states that he "need not occupy this Honorable Court's time to demonstrate that LNB which collects and reports in West Virginia may not escape the personal jurisdiction of this Court when its actions violate the FDCPA and FCPA of a Plaintiff presently residing in West Virginia." (Id., p. 3.) Plaintiff alleges that the "improprieties of LNB are/were continuous and systematic to affect Plaintiff while residing in West Virginia." (Id.) As an Exhibit, Plaintiff attaches a copy of his Consumer Credit Report. (Id., p. 4.)

In Reply, LNB argues that "Plaintiff's Response does not set forth any facts that, if true, would allow this Court to exercise jurisdiction over LNB." (Document No. 50, p. 1.) LNB contends that "the indisputable facts show that LNB had no contacts with West Virginia." (Id.) Further, LNB notes that "Plaintiff has failed to rebut that he was – and still remains – an Ohio resident." (Id., pp. 1 - 2.) LNB explains that Plaintiff appears to be arguing that a cause of action "arose out of the alleged reporting of Plaintiff's account to credit reporting agencies." (Id., p. 2.) LNB, however, argues that this "conduct was not directed at Plaintiff himself, and to the extent it was, Plaintiff was an Ohio resident at the time and remains one to this day." (Id.) LNB states that "to the extent that Plaintiff could establish that he has been harmed by the mere presence of the LNB record in the credit report, the credit reporting agency's contacts with West Virginia, if any, cannot be attributed to LNB for purposes of personal jurisdiction." (Id.) Finally, LNB states that "Plaintiff's argument, if accepted, would eviscerate the Due Process Clause as it relates to personal jurisdiction." (Id., p.

3.) LNB argues that "this Court cannot exercise jurisdiction over LNB solely by virtue of the fact that an Ohio resident (who was clearly an Ohio resident at the time any potentially wrongful conduct occurred) is now temporarily incarcerated in West Virginia." (Id., p. 3)

Plaintiff filed an "Objection to Defendant's Opposition to Motion to Dismiss." (Document No. 65.) Plaintiff argues that "an entity, corporation, or individual can be held accountable wheresoever their transactions impose a federal violation." (Id., p. 3.) Plaintiff argues that LNB's act of "utilizing the national credit reporting agencies to impose fraudulent reporting and debt collections violations" establishes proper jurisdiction. (Id.)

On July 1, 2013, Plaintiff filed his Affidavit stating that he has "never had an account # 4040073662 with" LBN. (Document No. 71.) As an Exhibit, Plaintiff attaches a copy of his "Open - End Mortgage" as filed in Cuyahoga County on December 4, 2008. (Id., pp. 2 - 7.)

Based upon the foregoing, the undersigned finds that Plaintiff has failed to make a prima facie showing of sufficient jurisdictional basis as to LBN. First, the undersigned finds that the Court lacks specific jurisdiction as there is no indication that LBN's contacts with West Virginia provided the basis for suit. In his Complaint, Plaintiff appears to allege that LNB, without Plaintiff's permission, allowed someone to open a 'Fraudulent Account' in Plaintiff's name on November 17, 2008. (Id.) A review of Plaintiff's Complaint as filed in White v. Lorain National Bank, No. 1:11-cv-284 (N.D. Ohio Feb. 9, 2011) and Plaintiff's Official Driving Records from the Ohio Bureau of Motor Vehicles reveal that Plaintiff was an Ohio resident at all times relevant to his Complaint. (Document Nos. 18-2 and 18-3.) Additionally, the Vice President of LNB declares that "LNB does not have any record of conducting or transacting any business in the State of West Virginia with Kenneth A. White." (Document No. 18-1.) The undersigned concludes that Plaintiff fails to indicate

any action taken by LNB in the State of West Virginia which provides the basis for finding that LNB "purposefully availed" itself of the privilege of conducting activities in West Virginia. Second, the undersigned must consider whether LNB's contacts with West Virginia are "continuous and systematic" as to establish general jurisdiction. A review of the Declaration of Kelly Dunfee, Vice President of LNB, reveals as follows: (1) "LNB is a national bank with its headquarters in Lorain County, Ohio;" (2) "LNB does not own or operate any branches, offices, or other banking operations in the State of West Virginia;" (3) "LNB does not own any real property in the State of West Virginia;" and (4) "LNB does not conduct or transact business in the State of West Virginia." Thus, the foregoing indicates that LNB does not have "continuous and systematic" contacts with West Virginia. The Court finds that the mere presence of LNB's record on Plaintiff's credit report, does not establish "continuous and systematic" contacts with West Virginia. See Ratliff v. Cooper Labs., Inc., 444 F.2d 745, 746 (4th Cir. 1971)(finding no general jurisdiction where activities in forum state included only solicitation by mail and mailing of promotional literature).The undersigned, therefore, finds that the Court may not exercise personal jurisdiction over LBN because LBN does not have sufficient "minimum contacts" with West Virginia. Accordingly, the undersigned recommends that LBN's Motion to Dismiss be granted. The undersigned finds it unnecessary to consider the other reasons which the LBN has submitted for dismissal.

      B.     Dominion East:

      Dominion East argues that "[t]his Court lacks personal jurisdiction over Defendant because neither the long arm statute, nor the minimum contacts test is satisfied." (Document No. 57, pp. 3 - 8.) Dominion East explains that it has no contacts with the State of West Virginia which would satisfy the long arm statute. (Id., pp. 4 - 5.) Dominion East further states that Plaintiff cannot show

the sufficient minimum contacts so as not to offend the requirements of due process. (<u>Id.</u>, pp. 6 - 8.)

In Response, Plaintiff states that Dominion East improperly argues that "although it had no physical presence in West Virginia, it has authority to improperly violate the Federal Debt and Collections Reporting Act (FDCPA) and the Federal Credit Reporting Act (FCPA) with immunity from federal courts retaining personal jurisdiction for violations of law conducted in those respective districts irrespective of physical presence." (Document No. 62, p. 1.) Plaintiff claims that Dominion East "without indisputableness has placed fraudulent charges onto his credit report and attempted to collect such debts with the knowing and intentional knowledge." (<u>Id.</u>, p. 2.) Plaintiff states that "[t]hese fraudulent reportings and debt collection practices imposed onto this credit report have resulted in significant accumulated losses due to an inability to refinance." (<u>Id.</u>) Plaintiff claims that Dominion East "has attempted to collect debts and has continued to conduct fraudulent debt practices while plaintiff was in West Virginia, and is therefore, responsible for its actions in the State of West Virginia." (<u>Id.</u>) Plaintiff, therefore, contends that "[t]he improprieties of DEG are/were continuous and systematic to affect Plaintiff while residing in West Virginia." (<u>Id.</u>) As an Exhibit, Plaintiff attaches a copy of his credit report dated November 28, 2012. (<u>Id.</u>, p. 4.)

On June 26, 2013, Plaintiff filed his Affidavit stating that he does not "owe Dominion East the sum of $1,531.00." (Document No. 67.) On October 3, 2013, Plaintiff filed his "Motion to Supplement U.S.C. Rule 15 and to Dismiss Defendant's Motion Stating "For Lack of Subject Matter and Personal Jurisdiction." (Document No. 90.) Plaintiff states that he "never had an account (350004093****), nor signed any contract with Defendant (during July 2009 and incurred the debt of $1,531 dollars)." (<u>Id.</u>, p. 1.) Plaintiff explains that "[o]n or about January 2006, Plaintiff became a victim of identity theft to which he became aware in 2010, when collection agencies began sending

Plaintiff notices and warnings in the mail." (Id., p. 2.) Plaintiff states that Dominion East is "insistent that Plaintiff repay a fraudulently reported account #350004093**** in the amount of $1,531." (Id., p. 3.) Plaintiff contends that "[e]ventually Defendant will end up spending more money in legal fees than trying to resolve Plaintiff's settlement." (Id., p. 3.) As an Exhibit, Plaintiff attaches a copy of his credit report. (Id., p. 5.)

Based upon the foregoing, the undersigned finds that Plaintiff has failed to make a prima facie showing of sufficient jurisdictional basis as to Dominion East. First, the undersigned finds that the Court lacks specific jurisdiction as there is no indication that Dominion East's contacts with West Virginia provided the basis for the instant suit. In his Complaint, Plaintiff appears to allege that Dominion East allegedly allowed someone to open a 'Fraudulent Account" in Plaintiff's name. (Id.) Dominion East argues, however, that "no allegations have been made regarding tortious acts in West Virginia and none are believed to have occurred as Dominion East Ohio's operations are solely in Ohio." (Document No. 57, p. 5.) The undersigned concludes that Plaintiff fails to indicate any action taken by Dominion East in the State of West Virginia which provides the basis for finding that Dominion East "purposefully availed" itself of the privilege of conducting activities in West Virginia. Second, the undersigned must consider whether Dominion East's contacts with West Virginia are "continuous and systematic" as to establish general jurisdiction. A review of the record reveals as follows: (1) "Dominion East Ohio does not conduct business or supply services in West Virginia;" (2) "Dominion East Ohio provides services and conducts business solely in the State of Ohio;" and (3) "Dominion East Ohio does not own property in West Virginia." Thus, the foregoing indicates that Dominion East does not have "continuous and systematic" contacts with West Virginia. The Court finds that the mere presence of Dominion East's record on Plaintiff's credit

report, does not establish "continuous and systematic" contacts with West Virginia. See Ratliff, 444

F.2d at 746(finding no general jurisdiction where activities in forum state included only solicitation

by mail and mailing of promotional literature).The undersigned, therefore, finds that the Court may

not exercise personal jurisdiction over Dominion East because Dominion East does not have

sufficient "minimum contacts" with West Virginia. Accordingly, the undersigned recommends that

Dominion East's Motion to Dismiss (Document No. 57.) be granted and Plaintiff's "Motion to

Supplement U.S.C. Rule 15 and to Dismiss Defendant's Motion Stating 'For Lack of Subject Matter

and Personal Jurisdiction'" (Document No. 90.) be denied. The undersigned finds it unnecessary to

consider the other reasons which the Dominion East has submitted for dismissal.

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court

confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED**

that the District Court **DENY** Plaintiff's Motion for Voluntary Dismissal (Document No. 97.),

**GRANT** Defendant Wells Fargo's Motion to Dismiss (Document No. 6.), **GRANT** Defendant

Lorain National Bank's Motion to Dismiss for Lack of Personal Jurisdiction (Document No. 18.),

**GRANT** Defendant Bank of America's Motion to Dismiss (Document No. 23.), **GRANT** Defendant

DFS Services's Motion to Dismiss (Document No. 26.), **GRANT** Defendant Huntington National

Bank's Motion to Dismiss (Document No. 28.), **GRANT** Defendant East Ohio Gas Company D/B/A

Dominion East Ohio's Motion to Dismiss (Document No. 57.), **DENY** Plaintiff's "Motion to Strike

Defendant Wells Fargo Bank N.A. D/B/A Wells Fargo Home Mortgage, Inc. Memorandum in

Support of Motion to Dismiss" (Document No. 60.), **DENY** Plaintiff's "Motion to Supplement

U.S.C. Rule 15 and to Dismiss Defendant's Motion Stating "For Lack of Subject Matter and

Personal Jurisdiction" (Document No. 90.).

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiffs, who are acting *pro se*, and transmit a copy to counsel of record.

Date: January 6, 2014.

R. Clarke VanDervort
United States Magistrate Judge